2002 OK CIV APP 9

**In the Matter of the ADOPTION OF C.D.O., a minor child.**

**Amy L.T. and Christopher M.T., Petitioners/Appellants,**

v.

**Robert L.O., Respondent/Appellee.**

**No. 95,611.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 18, 2001.

Carole J. Brown, Lawton, OK, for Appellants.

M. Monty Hightower, Burgess, Burgess, Burgess & Hightower, Lawton, OK, for Appellee.

JOHN F. REIF, Vice Chief Judge.

¶ 1 The question presented for decision is whether the trial court correctly applied 10 O.S. Supp.2000 § 7505–4.2 (B)(1) in deciding that C.D.O. was not eligible for adoption without the consent of his natural father. This statute provides that consent of a parent is not required when the parent willfully fails, refuses, or neglects to pay child support "for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding ... the petition for adoption ... [i]n substantial compliance with an order ... adjudicating the duty, amount, and manner of support."

¶ 2 At the hearing to determine whether C.D.O. could be adopted without the consent of his natural father, the parties stipulated

that natural father had made only two payments in the fourteen-month period prior to the filing of the petition for adoption. One payment was made in April of 1999 (twelve months prior to the petition) and the other was made in October 1999 (six months prior to the petition). The trial court concluded that these payments interrupted the running of the requisite consecutive twelve-month period and denied adoption without consent. The trial court also denied a motion for new trial that argued such payments were not "substantial compliance" with the child support order.

¶3 On appeal, the mother of C.D.O. and her husband (who sought to adopt C.D.O.) argue that the trial court misapplied § 7505-4.2(B)(1) by following *Mann v. Garrette,* 1976 OK 170, 556 P.2d 1003. This case recognized that a single instance of technical compliance with an order to pay support would toll the twelve-month period. Mother and her husband contend that the legislature amended the failure to support ground after the *Mann* case by requiring the obligor-parent to discharge their support obligation in "substantial compliance" with the support order. Mother and her husband believe that the legislature intended to (1) abrogate a parent's occasional, technical compliance with a support order as a defense to adoption without consent, and (2) require the court to examine the relevant statutory period for "substantial compliance." The task for this court is to decide what the legislature intended by requiring "substantial compliance with an order ... adjudicating the duty, amount, and manner of support."

¶4 It is axiomatic that legislative intent is to be first sought in the language of the statute. *McNeill v. City of Tulsa,* 1998 OK 2, ¶9, 953 P.2d 329, 332. We observe that the language of the statute requires "substantial compliance" with an order of support in three different particulars: (1) the duty to support, (2) the amount of support, and (3) the manner of support. While one or two occasional payments may be in accordance with *the amount* specified for particular monthly payments, the failure to pay for several months of any fourteen-month period may not be substantial compliance in order

to satisfy *the manner* or discharge *the duty* of payment. Clearly, the language of the statute alone does not allow this court to discern the legislative intent.

¶5 After considering the language of the statute in determining legislative intent, "it is proper to consider the history and consistent purpose of the legislation on the subject and to discover the policy of the Legislature as disclosed by the course of the legislation." *Id.* (citation omitted). A review of the history of the failure-to-pay-support ground tends to support the interpretation advanced by Mother and her husband.

¶6 Failure to pay child support became a statutory ground for adoption without consent in 1973. See Laws 1973, c. 69, § 1. The legislature initially made consent unnecessary "[w]here a parent has wilfully failed, refused or neglected to contribute the support of his child, as provided in the decree of divorce, or according to his financial ability if no provision for support is provided in the decree, for a period of one (1) year next preceding the filing of a petition for adoption of such child." See 10 O.S. Supp.1973 and 1974 60.6 (3).

¶7 Regarding court-ordered support, this provision focused on the parent's lack of compliance with the *literal* terms of the court order; that is, did the parent fail to pay *as provided in the decree* for one year. Therefore, if the parent made any of the payments *as provided in the decree,* then the condition of non-compliance for the full statutory period was not met. This is the conclusion that the court reached in *Mann* based on a strict construction of this statute.

¶8 In 1981, some five years after *Mann,* the legislature amended § 60.6(3) to allow adoption without the consent of a parent "[w]ho, for a period of twelve (12) months next preceding the filing of a petition for adoption of a child, has willfully failed, refused or neglected to contribute to the support of such child ... *in substantial compliance* with a support provision contained in a decree of divorce ... or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support." (Emphasis added.)

In 1985, the legislature further amended the failure-to-pay-support ground for adoption without consent by redesignating it as subsection (2) of § 60.6 and changing the designation of the twelve-month period from "next" preceding to "immediately" preceding the filing of a petition for adoption.

¶ 9 This version continued without change until the legislature renumbered § 60.6 to § 7505–4.2. The legislature also changed the statutory period of failure to support to "a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption."

¶ 10 The legislature has increasingly shown its intent not to allow obligor-parents to choose when or how much they will pay in order to avoid the consequence of adoption without their consent. For example, the most recent change that addresses failure to pay for twelve consecutive months out of the last fourteen months immediately preceding the filing of a petition for adoption was clearly aimed at an "eleventh hour catch-up" payment just before the most recent twelve-month period expires. Such payment, even if for full arrearages, is not "substantial compliance" with the manner of providing support.

¶ 11 In addition to the language and history of a statute, "[t]he subject matter and purpose of a statute are material to ascertaining the meaning of a word or phrase used and that language should be construed to be harmonious with the purpose of the act, rather than in a way which will defeat it." *McNeill*, 1998 OK 2, ¶ 11, 953 P.2d at 332 (citation omitted). In considering the effect of amendments on the meaning of a statutory scheme, the appellate courts have "the duty ... to adopt that construction of the amended act 'which will best repress the evils and advance the remedy' sought to be afforded by the Legislature." *Stokes v. State*, 1966 OK 155, ¶ 6, 410 P.2d 59, 61 (citing *Poafpybitty v. Skelly Oil Co.*, 1964 OK 162, 394 P.2d 515, 519). Furthermore, "[e]ven though the statute is a penal one it may be properly construed to accomplish the purpose for which it was enacted and so as to obviate the evil sought to be remedied." *Curtis v. Regis-*

*tered Dentists of Oklahoma*, 1943 OK 366, ¶ 8, 143 P.2d 427, 430 (citations omitted).

¶ 12 The failure-to-pay-support ground for adoption without consent is designed (1) to promote payment by obligor-parents as provided by divorce decrees and support orders, (2) to punish failure to pay support as provided by divorce decrees and support orders, and (3) to prevent obligor-parents from timing payments or withholding child support payments as a weapon or tactic in a continued war of resentment between the parties. To achieve these purposes and repress the evils attendant to failure to support, the legislature has required "substantial compliance" with the order that determines the support obligation. With reference to obedience to the directive of a divorce decree, "substantial compliance" has been defined to mean "compliance which substantially, essentially, in the main, for the most part, satisfies the means of accomplishing the objectives sought to be effected by the decree and at the same time does complete equity." *Pittman v. Pittman*, 419 So.2d 1376, 1379 (Ala.1982) (citation omitted). We believe the legislature used "substantial compliance" in this sense and to mean a regular, bona fide pattern of payment, over any given twelve-month period.

¶ 13 Making two payments at the beginning and in the middle of a twelve-month period is not compliance "which substantially, essentially, in the main, for the most part, satisfies the means of accomplishing the objectives" of a support order. It may well be that the timing and amount of these two payments were due to natural father's inability to pay, but financial ability to pay is relevant to the issue of willfulness, and not the issue of substantial compliance. *Adoption of J.L.H.*, 1987 OK 25, 737 P.2d 915; *Matter of Adoption of V.A.J.*, 1983 OK 23, 660 P.2d 139.

¶ 14 Admittedly, *Mann v. Garrette* provided bright line guidance for applying the failure to support ground for adoption without consent. However, the legislature has clearly rejected the rule of technical compliance set forth in *Mann*, and required substantial compliance with support orders. While judg-

ing substantial compliance for a given twelve-month period is a more difficult rule to apply than the bright line rule of technical compliance for any given month in a twelve-month period, it is nonetheless the standard the legislature has prescribed.

¶ 15 We note that "[w]hat constitutes substantial compliance is a matter dependent upon the particular facts of each case, none ever quite a clone of any other." *Pittman*, 419 So.2d at 1379 (citation omitted). Substantial compliance does not allow, however, the party who deviates from complete performance to materially detract from the benefit the other party would derive from complete performance and involves provision of substantially the same benefit the other party expected. See *Newcomb v. Schaeffler*, 131 Colo. 56, 279 P.2d 409, 412 (1955) (en banc).

¶ 16 We hold that the trial court erred in denying the motion for new trial and in ruling that the two payments by natural father in this case preserved his right to consent to the adoption of C.D.O. Those payments were not substantial compliance for twelve consecutive months out of the fourteen months immediately preceding the filing of the petition for adoption as required by section 7505–4.2(B)(1). We reverse the trial court's order denying the petition for adoption without consent on this ground, but remand for further proceedings to determine whether natural father's failure to pay support in substantial compliance with the support order was willful.

¶ 17 REVERSED AND REMANDED WITH INSTRUCTIONS.

¶ 18 GOODMAN, P.J., and COLBERT, J., concur.